# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 23, 2020   Decided April 24, 2020

No. 19-3090

UNITED STATES OF AMERICA,
APPELLEE

v.

SYLVAN D. ABNEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00191-1)

*Julia Fong Sheketoff*, Assistant Federal Public Defender, argued the cause and filed the memorandum of law and fact and reply for appellant. With her on the memorandum of law and fact and reply was *A.J. Kramer*, Federal Public Defender.

*Ethan L. Carroll*, Assistant U.S. Attorney, argued the cause for appellee. With him on appellee's memorandum of law and fact were *Elizabeth Trosman* and *Elizabeth H. Danello*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Chief Judge,* and TATEL and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Sylvan Abney appeals his sentence because the district court denied his request to allocute before the court sentenced him. We hold that denial was reversible error, so vacate the sentence and remand to the district court for resentencing.

## BACKGROUND

In December 2007, Abney pled guilty to unlawful possession with intent to distribute 50 grams or more of cocaine base, or crack, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (2006). Abney was initially released on personal recognizance pending sentencing. After Abney failed to comply with terms of that release, the district court revoked Abney's bond and, on August 2, 2010, sentenced him to the then-prevailing mandatory minimum: ten years' imprisonment and five years of supervised release. *See id*. § 841(b)(1)(A). On an earlier appeal, this court ordered resentencing because Abney's counsel had been ineffective in failing to seek a continuance of the sentencing pending the anticipated presidential approval of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, already passed by both houses of Congress. *See United States v. Abney*, 812 F.3d 1079, 1082 (D.C. Cir. 2016). That law would apply to sentences imposed after it was signed into law, and its elimination of higher mandatory minimum sentences for crack offenses than for those involving powder cocaine would have benefitted Abney. *See id*. at 1084. On remand, under the new law with its five-year mandatory minimum, the district court resentenced Abney to eight years in prison and five years of supervised release.

Abney was released from prison in 2016 but has twice been recommitted for failure to comply with terms of his supervised release. Abney first violated supervised release when he was convicted of misdemeanor contempt for visiting

his mother's home in violation of a D.C. Superior Court stay-away order. The district court revoked his supervised release in May 2017 and sentenced him to four months in prison with a four-year term of supervised release. After serving the term of imprisonment for having violated terms of his prior release, Abney was released to a halfway house, but was discharged before completing his term of sentence there after he returned late to the house on two occasions. He further violated conditions of release by failing to appear regularly for meetings with his probation officer and for failing to reside at his mother's home, which, with his mother's agreement following resolution of the Superior Court case, had become his assigned residence. *See* 11/8/19 Revocation Hearing Tr. (RH Tr.) at 1:18-2:9, 5:6-8 (Appellant's App'x (AA) 131-32, 135); 5/15/17 RH Tr. at 7:5-7 (AA 124). On November 8, 2019, the district court again revoked Abney's supervised release. 11/8/19 RH Tr. at 8:17-24 (AA 137). That revocation proceeding is the subject of this appeal.

Abney—who was removed as a child from his mother's custody and raised in foster homes yet had graduated from high school and begun college before his conviction at age 20—got a job after he came out of prison. *Id*. at 6:15-19, 7:25-8:3 (AA 135-37). At the revocation hearing, the government recommended that Abney serve four months in prison, while Abney requested six months in a halfway house so that he could keep working. *Id*. 6:3-8:6 (AA 135-37). Without first inviting Abney to address the court, the district court chose to exceed the government's recommendation, announcing that it would revoke Abney's supervised release and impose a sentence of six months' imprisonment, two months in a halfway house, and eighteen months of supervised release with mandated cognitive behavioral therapy. *Id*. at 8:9-24 (AA 137). As the court was specifying the terms of the sentence, Abney interrupted, asking, "May I say something?" *Id*. at 8:25

(AA 137). The district court replied, "I'm not done," and completed the imposition of the sentence. *Id*. at 9:1-10:8 (AA 138-39). After discussing with the probation officer some details regarding the halfway house assignment and available services, and asking both counsel whether they had requests or questions, the court asked, "Now, Mr. Abney, do you want to say something? What do you want to say?" *Id*. at 10:14-15 (AA 139).

Abney responded "Yes," and started to say that he thought he had not violated the terms of his release, questioning whether it was permissible for the probation officer to stop by his house more than once a month. *Id*. at 10:16-25 (AA 139). The district court interrupted, "Are you done?" *Id*. at 11:2 (AA 140). Abney responded, "No, I'm not done," and again protested that he did not understand how the probation officer could "pop by my house any time she wants," resulting in his being found in violation for his unwillingness to meet with her, when the terms of his probation required only that he meet with her once a month. *See id*. at 11:3-7 (AA 140); *see also id*. at 14:3-12 (AA 143).

The judge responded that Abney's failure to keep in touch with the probation officer violated his terms of supervised release, and said he would hold a status conference to review future conditions of supervision when Abney was next released. *Id*. at 11:8-18 (AA 140). Abney persisted, saying that he was "trying to get a new judge. I'm trying to change my probation [officer], and . . . going to jail is not helping my situation. That's making my situation even worse. . . . I'm trying to get into a halfway house." *Id*. at 12:12-15, 13:1-2 (AA 141-42). The court told Abney: "You're going to go to a halfway house at some point, but not until you serve six months." *Id*. at 13:3-5 (AA 142). Abney further urged the court, "I'm homeless. . . . I cannot stay with my mother, so this

is not helping my situation. You keep sending me to jail. It's not working. I got two jobs right now so why am I going to jail? This is not helping my situation." *Id*. at 13:6-17 (AA 142).

The court told Abney, "You can talk with your counsel," but Abney objected, "I'm talking to you. You're doing it. You're sending me to jail." *Id*. at 13:18-25 (AA 142). After the court again instructed Abney to speak with his counsel, counsel interjected that Abney was trying to express his "frustration" that "[l]iving on the streets and trying to maintain employment and comply with all of the conditions of supervised release is extremely difficult, and it sort of sets him up for failure," and that Abney "was asking for a lengthier time in the halfway house as opposed to incarceration . . . so that he can get himself back on his feet." *Id*. at 14:15-25 (AA 143). The court asked if Abney would like a longer term in the halfway house following incarceration than the two months the court had imposed; Abney's counsel said he would not. *See id*. at 15:2-16 (AA 144). The court rejected the notion that the halfway house should replace any of the six months of prison time, commenting in an aside to Abney's counsel, "I'm sure . . . you have a very clear recollection as to . . . how successful he was operating in the halfway house when he was in one. . . . He wasn't very successful." *Id*. at 15:17-19, 21 (AA 144). The court told counsel to "[p]lease answer to the best of your ability any questions" Abney has, and concluded the proceeding. *Id*. at 16:10-11 (AA 145).

On appeal, Abney asks for resentencing on the ground that the district court denied his right to allocute before delivery of his sentence. Abney also requests reassignment of the case to a different judge for resentencing to preserve the reality and appearance of sentencing by an impartial court, because he believes the district judge will have difficulty setting aside his

prior judgment. The government does not dispute that the district court erred in denying Abney's right to presentence allocution, but argues that Abney did not preserve his claim in the district court, that the district court did not commit plain error, and that, in any event, reassignment is unwarranted. For the reasons set forth below, we grant Abney's request for resentencing but deny his request for reassignment.

## DISCUSSION

We must vacate the sentence the district court imposed without having first invited Abney to allocute, but there is more than one available path to that result. The district court erred in failing to invite Abney to allocute before sentencing him. While the court was imposing the sentence, Abney asked to speak. The judge stopped him and finished the sentencing before circling back and addressing himself to Abney. The judge responded to Abney's further questions by directing him to get any clarification from his own counsel. The defense did not further take exception to the court's failure to invite Abney to allocute.

District courts have an established, affirmative obligation to invite defendants to allocute before they impose a sentence—whether initially or upon violation of conditions of supervised release. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii), 32.1(b)(2)(E). Our circuit has had few opportunities to review allocution-denial claims, but the law of other circuits reveals a range of approaches to review of such errors. Where courts fail to make the requisite invitation, some circuits require automatic reversal, or review some unpreserved allocution claims *de novo*. *See, e.g.*, *United States v. De Alba Pagan*, 33 F.3d 125, 130 (1st Cir. 1994) (holding that, "if the trial court fails to afford a defendant either the right of allocution conferred by Rule 32(a)(1)(C) or its functional equivalent,

vacation of the ensuing sentence must follow automatically"); *United States v. Richardson*, 948 F.3d 733, 744 (6th Cir. 2020) ("[W]e review an allegation of a complete denial of the right to allocute *de novo*[, b]ut when the appellant alleges an improper limitation on his right to allocute—but failed to object below— we review for plain error.") (citation omitted). Other circuits review an unpreserved allocution-denial claim only for plain error. *See United States v. Bustamante-Conchas*, 850 F.3d 1130, 1133, 1138-39 (10th Cir. 2017) (en banc) (applying plain-error standard to allocution denial, reversing circuit precedent that had treated such error as "per se or presumptively prejudicial"); *United States v. Reyna*, 358 F.3d 344, 347, 350 (5th Cir. 2004) (en banc) (applying plain-error standard to allocution error, reversing prior "consistently held" circuit rule that "denial of the right of allocution is not subject to plain or harmless error review under Rule 52" but instead "requires automatic reversal"); *see generally United States v. Vonn*, 535 U.S. 55, 65 (2002) (holding Rule 52(b) plain-error review applicable to district court's failure during plea colloquy to fulfill affirmative obligation of Rule 11(b)(1)(D) to inform defendant of right to appointed trial counsel).

We have not weighed in on the review framework but, assuming the more demanding approach—that reversal is in no case "automatic" and that preservation matters—we conclude that Abney's attempt to speak up preserved his claim and, even if it did not, the court's failure to invite Abney to allocute before it sentenced him is plain error calling for resentencing. On this record, we believe that Abney's request to "say something" sufficed to preserve his objection. But whether we review Abney's claim as preserved by his request to speak in district court, or as raised for the first time on appeal, so scrutinized only for plain error, *see* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-36 (1993), we conclude that vacatur and remand is required.

### 1.  Abney Preserved His Claim

Considered in context, Abney's request to speak sufficed to preserve his allocution claim.  Rule 51(b) provides that "[a] party may preserve a claim of error by informing the court . . . of [1] the action the party wishes the court to take, or [2] the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b).  "By 'informing the court' of the 'action' he 'wishes the court to take,' a party ordinarily brings to the court's attention his objection to a contrary decision."  *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (citation omitted); *see also United States v. Tate*, 630 F.3d 194, 197 (D.C. Cir. 2011) ("[C]laims of error are preserved when a party informs the district court of the requested action, or of the objection and the grounds therefor." (citing *United States v. Wilson*, 605 F.3d 985, 1022 (D.C. Cir. 2010))).  Once a party has asked the court to take action the party believes is legally required, further "exceptions to the district court's rulings or orders are unnecessary" because the "point of requiring objections to be made at the time of sentencing is to afford the district court the opportunity to consider them, not to clutter the proceedings with needless objections after the district court has ruled."  *Tate*, 630 F.3d at 197 (citing *In re Sealed Case*, 439 F.3d 685, 690 n.2 (D.C. Cir. 2003)); *see also United States v. Rashad*, 396 F.3d 398, 401 (D.C. Cir. 2005).

Abney preserved his claim under the first clause of Rule 51(b), as interpreted in *Holguin-Hernandez*.  The dynamics of sentencing support that result:  After a defendant tries unsuccessfully to be heard at sentencing, it is unrealistic and even counterproductive to require him to "say, in effect, 'now that you have imposed sentence, let me share some mitigating circumstances you may wish to consider in meting out my punishment.'"  *United States v. Barnes*, 948 F.2d 325, 331 (7th

Cir. 1991). Abney preserved his claim when he asked during sentencing for a chance to say something and the district court denied his request. The defense was under no further obligation to state an objection after the sentencing was complete.

The Supreme Court in *Holguin-Hernandez* held that counsel's request for a sentence shorter than the one the court ultimately imposed preserved defendant's claim under 18 U.S.C. § 3553(a) that the sentence was excessive. *See* 140 S. Ct. at 766. The Court stressed that trial judges, "having in mind their 'overarching duty' under § 3553(a), would ordinarily understand" that such a defendant "was making the argument . . . that the shorter sentence would be 'sufficient' and a longer sentence 'greater than necessary' to achieve the purposes of sentencing" under § 3553(a). *Id*. (quoting *Pepper v. United States*, 562 U.S. 476, 493 (2011)). Here, we deal with denial of presentence allocution, a right to which it is likewise fair to assume district court judges during sentencing "hav[e] in mind." Indeed, many—if not most—trial judges, including the judge in this case, *see* 8/2/10 Sentencing Hearing Tr. at 10:23-24 (AA 37), have a standard script or template that they adapt or reference as a prompt during sentencing proceedings to ensure that they cover all the requisite points in each sentencing. A defendant's opportunity to allocute is—or should be—a standard item on such a checklist. *See Bustamante-Conchas*, 850 F.3d at 1133 ("Of course, the best practice is for the district court in its trial manuals and other memory prompts to always offer defendants the opportunity to allocute on their own behalf."). Indeed, the same judge that sentenced Abney in 2019 previously emphasized the court's "practice to hear from . . . the defendant himself if he wishes to address the court," 8/2/10 Sentencing Hearing Tr. at 2:15-17 (AA 29), and noted the defendant's "right to address the court" before the court "would decide" his sentence, 4/9/13 Motion

Hearing Tr. at 17:2-3 (AA 56). When the judge resentenced Abney in 2016 on remand from this court, Abney thanked the court for his opportunity to speak, to which the judge responded, "You're entitled to it. You're absolutely entitled." 5/20/16 Resentencing Hearing Tr. at 30:6-7 (AA 106). And, most relevant here, the same judge asked if Abney wished to speak before revocation of his supervised release and sentencing in 2017. 5/15/17 RH Tr. at 7:25-8:8 (AA 124-25).

At the 2019 hearing, however, the court began to impose the sentence without inviting allocution. Abney interrupted, "May I say something?" 11/8/19 RH Tr. at 8:25 (AA 137). Given the context and timing of his request, it was evident Abney was invoking his right to "make a statement" on his own behalf prior to sentencing. Fed. R. Crim. P. 32.1(b)(2)(E) (requiring that every defendant be given "an opportunity to make a statement and present any information in mitigation"). That request to "say something" as the district court began to deliver sentence sufficed to "bring[] to the court's attention" his entitlement to presentence allocution, thereby preserving his claim. *Holguin-Hernandez*, 140 S. Ct. at 766. And, just as the claim in *Holguin-Hernandez* was not forfeited where the judge "asked counsel if there was '[a]nything further,'" in response to which "Counsel said that there was not," *id*. at 765, Abney's counsel did not forfeit his allocution claim by responding to the district court's general query for "[a]ny other requests" by saying, "No other requests," 11/8/19 RH Tr. at 10:9-10 (AA 139). We do not require defendants or their counsel to invoke magic words or talismanic language, or to reassert in the form of an exception to the court's decision a claim already preserved when the party asked the court for the desired judicial action. *See* Fed. R. Crim. P. 51(a). A party's request for the desired action that reasonably apprises the district court of the error and gives the court an opportunity to correct it is alone enough. *See Tate*, 630 F.3d at 197-98. Once

Abney asked to speak at sentencing, his claim was preserved without further need to make exception after the district court ruled.

In applying *Holguin-Hernandez*, we acknowledge distinctions between that case and this one. The Court there held that a simple request for a shorter sentence preserved for appeal the claim that the sentence was excessive in violation of 18 U.S.C. § 3553(a), but noted that it was not thereby deciding "what is sufficient to preserve a claim that a trial court used improper *procedures* in arriving at its chosen sentence." *Holguin-Hernandez*, 140 S. Ct. at 767; *accord id.* (Alito, J., concurring). The Court's caveat was evidently sparked by the concern that a general request for a lower sentence might not suffice, for example, to bring to a sentencing court's attention procedural errors in Sentencing Guidelines calculations. Only four years earlier, the Court in *Molina-Martinez v. United States* observed that "[t]he Guidelines are complex, and so there will be instances when a district court's sentencing of a defendant within the framework of an incorrect Guidelines range goes unnoticed," and held that the defendant, who had "failed to object to the miscalculation," was entitled to appellate review only for plain error. 136 S. Ct. 1338, 1342-43 (2016); *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) ("Given the complexity of the calculation [of Sentencing Guidelines ranges], district courts sometimes make mistakes. It is unsurprising, then, that 'there will be instances when a district court's sentencing of a defendant within the framework of an incorrect Guidelines range goes unnoticed' by the parties as well, which may result in a defendant raising the error for the first time on appeal." (quoting *Molina-Martinez*, 136 S. Ct. at 1343)).

This case involves a claim of procedural error, but because the procedural right involved is a requisite of any sentencing

and its omission is easy to detect, we treat it as akin to the straightforward claim of excessive sentence in *Holguin-Hernandez* and unlike the buried flaws in Sentencing-Guidelines calculations described in *Molina-Martinez* and *Rosales-Mireles* that may call for more specific and detailed objections to be effectively preserved under the first clause of Rule 51(b). District courts have a clear, well-established, affirmative obligation to invite defendants to exercise their right to speak on their own behalf before sentencing. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii), 32.1(b)(2)(E). Against that backdrop, it is difficult to envision a request by a defendant to be heard at sentencing that would not suffice under Rule 51(b) to "inform[]the court" of the nature of the claim. There was no more need here for Abney to specify that he sought to "allocute" than there was for Gonzalo Holguin-Hernandez to specify that he sought a sentence that was no "greater than necessary" under 18 U.S.C. § 3553(a), or to specify that he took exception to the sentence the court imposed as "unreasonable." *Holguin-Hernandez*, 140 S. Ct. at 766. In the context of a revocation hearing, it would be apparent to a court that, when Abney asked, "May I say something?" he was invoking his right under Rule 32.1(b)(2)(E) to speak on his own behalf before being sentenced.

We accordingly review Abney's claim of error *de novo*. But because this is our court's first application of *Holguin-Hernandez*, and the error here is sufficiently clear, we will also explain below why analysis of the claim as unpreserved would also require vacatur and remand.

## 2. The District Court Erred in Denying Abney's Right to Allocute

A defendant has a right, codified in the Federal Rules of Criminal Procedure, to address the sentencing judge before

imposition of a sentence. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii). "[T]rial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." *Green v. United States*, 365 U.S. 301, 305 (1961) (plurality opinion) (Frankfurter, J). The allocution right is deeply rooted in our legal tradition. *See Couch v. United States*, 235 F.2d 519, 523 (D.C. Cir. 1956) (en banc). "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal.'' *Green*, 365 U.S. at 304. The simple procedural step serves several interrelated purposes, including eliciting information relevant to mitigation or mercy, demonstrating to the public that the courts treat criminal defendants in an individualized, fair, and openminded manner, and simply acknowledging the defendant's humanity. *See Bustamante-Conchas*, 850 F.3d at 1136-37; *United States v. Daniels*, 760 F.3d 920, 924, 926 (9th Cir. 2014); *De Alba Pagan*, 33 F.3d at 129; *Barnes*, 948 F.2d at 328; *see also generally* Kimberly A. Thomas, *Beyond Mitigation: Towards a Theory of Allocution*, 75 Fordham L. Rev. 2641, 2666-74 (2007) (arguing that allocution is important not only for potential mitigation, but also for humanizing the defendant); Jonathan D. Casper, Tom R. Tyler, and Bonnie Fisher, *Procedural Justice in Felony Cases*, 22 Law & Soc'y Rev. 483, 487-88 (1988) (summarizing studies that indicate "litigants who receive unfavorable outcomes but perceive that they have been able to express their views fully and to have them considered may be more satisfied with the overall experience than those who receive more favorable outcomes yet perceive that they have had less opportunity to have their view expressed and considered"). The intervening years since the Supreme Court decided *Green* have brought profound transformations in criminal procedure, but "[n]one of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation," for

the "most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." 365 U.S. at 304.

The right of presentence allocution applies to sentences imposed for revocation of supervised release just as it does to initial sentencing. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii) and 32.1(b)(2)(E); *Daniels*, 760 F.3d at 924; *United States v. Gonzalez*, 529 F.3d 94, 97 (2d Cir. 2008); *United States v. Carruth*, 528 F.3d 845, 846-47 (11th Cir. 2008); *United States v. Pitre*, 504 F.3d 657, 661-62 (7th Cir. 2007). Rule 32 explicitly requires allocution "[b]efore imposing sentence" in an original sentencing proceeding, Fed. R. Crim. P. 32(i)(4)(A)(ii), whereas Rule 32.1 provides in more summary fashion that a person facing revocation of supervised release "is entitled to" an "opportunity to make a statement and present any information in mitigation," Fed. R. Crim. P. 32.1(b)(2)(E).

The government suggests that, because "Rule 32.1(b)(2)(E) does not specify when the opportunity to speak and provide mitigating information must occur," and "the court ultimately did invite appellant to speak," it is not entirely clear whether the district court erred in failing to invite the defendant to speak "*before* the district court announces its intended sentence." Appellee Br. 15-16 (emphasis added). We are unpersuaded. Despite the rules' wording differences, we hold that the same allocution right applies whether the context is initial or revocation sentencing. The timing of the opportunity to allocute—*before* the sentence is imposed—is widely and appropriately recognized as essential both to the reality and public perception that the judge will fairly consider it before deciding on the sentence. The government identifies no persuasive reason why the Rules' drafters would have tacitly intended that the allocution "opportunity" to which the defendant is "entitled" at revocation, *per* Rule 32.1, differ in

that key respect from the opportunity described in Rule 32. The Advisory Committee Notes to the 2005 Amendments addressed a circuit split over whether the Rule 32 allocution requirements should be incorporated into Rule 32.1, explaining that "[t]he amended rule recognizes the importance of allocution and now explicitly recognizes that right at Rule 32.1(b)(2) revocation hearings, and extends it as well to Rule 32.1(c)(1) modification hearings where the court may decide to modify the terms or conditions of the defendant's probation. In each instance the court is required to give the defendant the opportunity to make a statement and present any mitigating information." Fed. R. Crim. P. 32.1 advisory committee's note (2005 amend.). The differing syntax of the two rules reflects that the primary statement of the right appears in Rule 32, with Rule 32.1 confirming its applicability at revocation or modification sentencing. If allocution is to serve its purposes, the opportunity to allocute must in either context precede the sentencing decision.

The government contends that "[i]t is not clear that 'statement' and 'information in mitigation'" as used in Rule 32.1 "even refer to sentencing." Appellee Br. at 14. Because the subsection is titled "Revocation Hearing," the government speculates that "the text of Rule 32.1(b)(2)(E) could reasonably be read as referring not to a right of sentencing allocution but instead to a defendant's right to present mitigating evidence to convince the court that any violation does not warrant revocation." *Id.* Abney responds that "[i]t is not clear what the government means by this; when a court revokes a defendant's supervised release, it *is* sentencing him," so Rule 32.1 "guaranteed Mr. Abney the right to allocute before the court revoked his release and replaced it with prison." Reply Br. at 7. We agree with Abney. Indeed, the government's argument would appear to cut the other way: If we were to read Rule 32.1 to address only whether or not to revoke in the first place,

revocation resentencing would have to proceed under Rule 32, which is not by its terms limited to initial sentencing but applies generally to "Sentencing and Judgment." Whether under Rule 32 or Rule 32.1, a court sentencing a defendant to confinement upon revocation of supervised release must offer the defendant a presentence opportunity to allocute.

There is no dispute that the district court did not invite Abney to speak before it sentenced him to prison. The government suggests that the court cured the error by allowing Abney to speak afterwards. Perhaps a belated opportunity to allocute could be effective if, for example, the court openly acknowledged its lapse during the sentencing proceeding, explained that it would treat its announced sentence as provisional only, reopened the proceeding and invited the defendant to speak with assurances that it would give full consideration to the defendant's statements, and then stated reasons for its sentence that accounted for what the defendant said. *See generally United States v. Margiotti*, 85 F.3d 100, 103 (2d Cir. 1996) (holding error cured); *but see Gonzalez*, 529 F.3d at 97-98 (holding error uncured); *United States v. Luepke*, 495 F.3d 443, 450 (7th Cir. 2007) (same); *Barnes*, 948 F.2d at 331 (same). An on-the-spot remedy for denial of presentence allocution is certainly preferable to vacatur and remand. But for a correction to be effective, the district court must make unmistakably clear that it has set aside the announced sentence and heard from the defendant with an open mind. After all, "neither a defendant nor observers in the courtroom are likely to believe that an opportunity to try to talk a judge out of a sentence already imposed is as effective as an opportunity to speak before a sentence has been imposed." *Gonzalez*, 529 F.3d at 98.

Assuming a court may in some circumstances correct its error by promptly recognizing its lapse and, in effect,

rewinding the proceeding, that is not what happened in this case. While the district court eventually permitted Abney to speak, it did not acknowledge its error in failing to do so presentence. The court did not set aside its previous sentence or announce that it would treat it as only a proposal until it had heard from Abney. Once Abney spoke, asking for placement in a halfway house rather than prison to support his rehabilitation and allow him to continue to work, and offering mitigating circumstances for his violation of supervised release, the court did not consider how Abney's statement might bear on the sentence. Rather, the court treated its exchange with Abney as a chance for Abney to ask questions and obtain information about a *fait accompli*—information that the court by and large told Abney he should seek from his counsel. 11/8/19 RH Tr. at 13:18-23 (AA 142) ("COURT: You can talk with your counsel. DEFENDANT: I'm talking to you. You're doing it. You're sending me to jail."); *id.* at 16:10-11 (AA 145). The closest the court came to engaging with Abney's arguments was in an aside directed to Abney's counsel, commenting "I'm sure . . . you have a very clear recollection as to . . . how successful he was" in his previous halfway house placement. *Id.* at 15:17-19 (AA 144).

### 3. The Error Requires Vacatur Even If Unpreserved

Even if Abney's request to be heard at sentencing were not sufficiently clear to count under Rule 51(b) as "informing the court" of the error, the district court's error warrants vacatur for resentencing. For an unpreserved error to count as "plain error" under Rule 52(b), the error must be clear, affect substantial rights, and impair the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 734-36.

The error here is clear. Although neither the Supreme Court nor this one has had prior occasion to apply Rule

32.1(b)(2)(E), "[e]ven absent binding case law . . . an error can be plain if it violates an 'absolutely clear' legal norm, 'for example, because of the clarity of a statutory provision.'" *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) (quoting *United States v. Merlos,* 8 F.3d 48, 51 (D.C. Cir. 1993)). As already discussed, the right to presentence allocution has deep roots in our jurisprudence, and there is no serious argument that it does not apply to the imposition of a sentence upon revocation of supervised release just as it does to initial sentencing. The rule is straightforward. Every court to have decided the issue has held that Rule 32.1 guarantees defendants' right to allocute before sentence. The government has identified no case from any circuit—nor have we—that applied plain-error review and determined that an uncorrected failure to invite a defendant to allocute before imposing a sentence was not clear error under the first step of *Olano*.

To show prejudice on plain-error review, a defendant ordinarily must identify "a reasonable likelihood that the sentencing court's obvious errors affected his sentence." *In re Sealed Case*, 573 F.3d 844, 852 (D.C. Cir. 2009) (quoting *Olano*, 507 U.S. at 734). We assume without deciding that we require a case-specific showing of prejudice in allocution cases. *But see, e.g.*, *Olano*, 507 U.S. at 735 (noting that certain errors may be presumed prejudicial); *Luepke*, 495 F.3d at 451 (presuming prejudice because it "would be almost impossible to determine whether . . . a defendant's statement, that was never made, would have altered the conclusions of the sentencing court"); *see also Bustamante-Conchas*, 850 F.3d at 1138-39 (surveying circuit law presuming allocution errors are prejudicial, and adopting a "more precise" rule that "a defendant who shows he has been denied the right to allocute has met his burden of demonstrating prejudice absent some extraordinary circumstance"). The potential effect of a denial of allocution is not easily reduced to argument among lawyers,

further vexing the unavoidably counterfactual task of establishing prejudice from an omission. At most, the "somewhat lighter" prejudice requirement that we apply in the context of sentencing error, *United States v. Anderson*, 632 F.3d 1264, 1271 (D.C. Cir. 2011), applies to an allocution claim. Some courts conclude that allocution errors can be nonprejudicial only if the defendant received the lowest possible sentence. *See, e.g.*, *Bustamante-Conchas*, 850 F.3d at 1140; *Daniels*, 760 F.3d at 925; *Carruth*, 528 F.3d 847 n.4. Needless to say, that is not the case here, where the court had full discretion and sentenced Abney more harshly than even the government requested. Had the court asked Abney to speak and given due consideration to his statement before it decided upon the sentence, we believe there is a reasonable likelihood the sentence would have been more forbearing and better tailored to Abney's circumstances. The error here accordingly was prejudicial.

Finally, with the elements of plain error satisfied here, we also conclude that we should exercise our discretion to correct the error. Plain error calls for correction where it would otherwise "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736.

Imposing a criminal sentence is among the gravest powers a government exercises over its people, and a defendant's presentence allocution to the court is a significant human encounter. The defendant's right to speak, and the court's corresponding "duty to listen and give careful and serious consideration" to what the defendant says, *Daniels*, 760 F.3d at 926 (quoting *United States v. Mack*, 200 F.3d 653, 658 (9th Cir. 2000)), provide essential recognition of the seriousness of the event for the sentenced individual, and for the broader community in whose name the sentence is imposed. A

defendant, speaking personally to the court and the public, may evoke mercy.

Even where the judge's sentence remains unaffected, ensuring the defendant's right to make a statement bolsters the integrity of the judicial process by having the judge listen to and thereby openly recognize the defendant as a fellow human being whose liberty is at stake. Allocution disrupts the reality or appearance of "assembly-line justice," *Barnes*, 948 F.2d at 331, and thus its denial is no less threatening to the integrity of our judicial system—and, indeed, perhaps more so—when the sentence appears to be a foregone conclusion. Abney's brief points to hearing transcripts and contends they show that "the district judge displayed certainty about the sentence he imposed—and no openness to being influenced by what Mr. Abney had to say." Appellant Br. 12. Our own review of those transcripts shows that Abney's inability to be heard and make his circumstances understood by the person "sending me to jail" evidently amplified his frustration with a process and sentence that he perceived "[was] not helping my situation." 11/8/19 RH Tr. at 13:20 (AA 142); *id.* at 12:14 (AA 141). We need not credit counsel's characterization or the bases of Abney's frustration to view them as some evidence of risk to the parties' and the public's perception of the court as openminded and fair.

In the ordinary course of criminal proceedings, defendants themselves typically remain silent. The prevalence of plea bargaining and, when cases do go to trial, the reality that few criminal defendants testify, mean that the judge and the public rarely hear directly from the person being prosecuted. We do not question those constraints in underscoring the importance of allocution as a chance for the defendant's own voice and perspective to be heard. In the words of one judge with decades of sentencing experience, "[p]ermitting a defendant to speak

reaffirms human dignity in the face of severe punishment." D. Brock Hornby, *Speaking in Sentences*, 14 Green Bag 2D 147, 154 (2011). Given the importance of the allocution right, there may be few, if any, cases in which its unremedied denial would not undermine the fairness of the judicial process. The integrity of the process afforded this defendant requires vacatur and remand here.

### 4. Abney's Request for Reassignment

We deny Abney's request to reassign the case to a different judge for resentencing. Abney seeks remand to a different district judge under 28 U.S.C. § 2106, which gives us the power to direct reassignment on remand "as may be just under the circumstances." *See Liteky v. U.S.*, 510 U.S. 540, 554 (1994). Reassignment is a remedy reserved for "the unusual case." *United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997). This case is assigned to an experienced district judge. He has previously recognized that Abney is "absolutely entitled" to an opportunity to allocute. *See* p. 10, *supra.* We expect that the judge will be able to "put[] out of his [] mind [his] previously-expressed views" about the appropriate sentence, approach Abney with a clean slate and an open mind, invite him to speak before imposing the sentence, and take his statements into account in resentencing him. *Id.*

\* \* \*

Because the district court erred in denying Abney's right of presentence allocution, the objection was preserved and, even if it were not, the error was plain, we vacate the sentence and remand to the district court for resentencing in conformity with Rule 32.1.

*So ordered.*