NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0198n.06

No. 21-1372

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
May 13, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) ) |
| v. | ) ) ) |
| MALCOLM JOHNNY-RAY BROWN, | ) ) |
| Defendant-Appellant. | ) ) ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: COLE, CLAY, and THAPAR, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Malcolm Johnny-Ray Brown appeals his sentence for violating the conditions of his supervised release pursuant to 18 U.S.C. § 3583(e)(3). For the reasons set forth below, this Court **VACATES** the sentence and **REMANDS** for re-sentencing.

## I.    BACKGROUND

Defendant Malcolm Brown began a three-year term of supervised release after completing a thirty-three month sentence of imprisonment for being a felon in possession of a firearm, to which he pled guilty, in violation of 18 U.S.C. § 922(g)(1). After completing his term of incarceration, Brown relocated to a halfway house in Grand Rapids, Michigan. Brown's period of supervised release began on September 18, 2020. Before beginning supervised release, but while still under the Bureau of Prisons' jurisdiction, Brown received an incident report on August 24, 2020, because he was found to be residing at a home where a woman named Jennifer Smith was also living. Smith, it turned out, was also a Bureau of Prisons supervisee, and her underlying

offense was distribution of methamphetamine. Brown was instructed not to have any further contact with Smith outside of the welding class in which they were both enrollees. After maintaining compliance, Brown and Smith were granted permission to re-associate beginning January 26, 2021. At the sentencing hearing, Brown characterized Smith as his girlfriend.

On February 5, 2021, Brown's probation officer petitioned the district court for a warrant for violation of the terms of supervised release, specifying the following four violations: (1) not answering the probation officer's questions truthfully; (2) associating with a known felon without first receiving the probation officer's prior permission; (3) failing to follow the probation officer's instructions related to the conditions of supervised release; and (4) impeding or obstructing the probation officer's search of Brown's cell phone.

The petition averred that the nature of the non-compliance stemmed from a January 30, 2021 car accident; that day, Kent County, Michigan Sherriff's Department responded to a single-vehicle accident. Upon arrival, officers found Smith, who had numerous lacerations and seemed intoxicated; Smith appeared to be the passenger in the car, though the record is inconsistent concerning whether she was the passenger or the driver. She told officers that she was unsure of the driver's name as she had only recently met him. That putative unknown driver turned out to be Defendant Brown. Witnesses to the single-car accident told police that they observed a black male (Defendant Brown) and Smith exit the vehicle; the male purportedly borrowed a witness' telephone to call his mother. The number the driver called matched the phone number the probation officer knew belonged to Brown's mother; a phone call to her confirmed that her son had called her upset because he had been in a car accident. A temporary driver's permit issued to Brown was found in the vehicle, and its physical description matched the description of the male

driver set forth by witnesses; the vehicle was also registered to Brown. Brown never reported the accident to his probation officer.

On February 2, 2021, the probation officer instructed Brown to report to the probation office on February 4, 2021 and to have no further contact or communication with Smith. When the officer asked Brown about the accident, Brown apparently said that Smith had taken his car and crashed it and that he had not been involved. In advance of the February 4 meeting, the probation officer received authorization to search Brown's phone and vehicle under reasonable suspicion of supervised release violations.

On February 4, Brown arrived at the probation office as expected. However, he continued to deny any involvement in the January 30 car accident. Another falsehood concerned his method of transport to the office. Brown stated that he had received a ride from a male friend; however, an officer followed Brown out of the building and observed a vehicle matching the description Brown provided regarding his transportation. Inside that vehicle was Smith; Smith stated that the vehicle belonged to Brown. She also possessed one of Brown's phones. After some back and forth, Brown was informed that his phone was subject to search, and he would need to surrender the device by 1:00 p.m. that day. Brown surrendered the phone but refused to provide the password to the device; he persisted in his refusal even when informed that refusal would constitute obstruction and interference.

As stated above, Brown's probation officer filed a petition alleging that Defendant violated four conditions of supervised release, and the district court issued an arrest warrant. Smith, who was alleged to have committed largely the same violations as Brown, received a summons (rather than an arrest warrant). Brown waived his right to a preliminary hearing, and on February 11, 2021, the district court remanded Brown to custody pending a final revocation hearing.

For the four, Grade-C violations of supervised release, with a criminal history category V, Brown's Guidelines range was set at seven-to-thirteen months of incarceration under U.S. Sentencing Guidelines Manual ("U.S.S.G."; "Guidelines") § 7B1.4(a). Nevertheless, the probation officer recommended a sentence of twenty-four months, the statutory maximum, followed by twelve months of supervised release. Brown submitted a sentencing memorandum in advance of the final violation hearing, did not contest the supervised release violations, and sought eight months of incarceration.

At the supervised release violation hearing, the defense justified its request for a within-Guidelines sentence of eight months, citing a possible sentencing disparity with Smith; counsel noted Brown's success at maintaining full-time employment while on release and his potential for future professional success. The government requested a sentence within the recommended range of seven to thirteen months. Ultimately, Brown pled guilty to each of the four charged violations of his supervised release; he also admitted that he lied to the probation officer about not being involved in the automobile accident.

The district court found Brown guilty of each violation; it then heard allocution. After defense counsel and Defendant Brown spoke, counsel for the government introduced allegations post-dating the petition:

> What's frustrating about this case to me, Your Honor, is that Mr. Brown is clearly intelligent with a lot of promise. He is attending school, and he had a good job, and I think he has potential to really turn his life around down the road. However, in the present matter not only do we have the incidents to which he has pleaded guilty to, but for sentencing purposes I think it's important to highlight to the Court, you know, the number of jail calls that followed that really focused on with Ms. Smith, growing drugs on February 7, on discussing the phone search on February 8 and deleting everything in his phone, discussing the growth of the drugs on February 10, and talking about the drugs again on February 10.
>
> And so again, that goes directly to violation 2. No contact with her. But it postdates the petition. So again it's an issue of he was already on notice that, you know, he has

taken these improper actions and continuing with the conduct, continuing to violate the orders.

(Violation Hr'g Tr., R. 66, PageID ## 279–80).  The government then "respectfully urge[d]" the district court "to consider a [G]uideline range of confinement within [the seven-to-thirteen] months range."  *Id.* at PageID # 281.

The government's appellate briefing adds some clarity.  After filing the petition but before the final revocation hearing, the probation officer informed counsel for the government of telephone calls Brown allegedly made from the Newaygo County Jail to Smith, thus indicating prohibited ongoing communication between the couple.  It is asserted that while detained, Brown spoke with Smith on four occasions (on February 6, 7, 8, and 10, 2021).  Government counsel reports it forwarded the audio recording and a summary of the calls to defense counsel, who is said to have confirmed receipt by reply email.  However, proof of these calls does not exist anywhere in the record other than in the sentencing hearing transcript.

In response to the parties' allocution, the district court explained its rationale before imposing the sentence.  It deemed "the evidence of the jail phone calls [to be] really troubling" before continuing:

> I think clearly he didn't want his probation officer . . . to know he was still seeing Ms. Smith, but I also think that there is a very good chance that by a preponderance even, that on that phone was evidence of other wrongdoing.  And his attempts to have matters o[n] the phone deleted after he was arrested and incarcerated reinforces that considerably in my view.

(*Id.* at PageID ## 282–83).  The district court sentenced Brown to an above-Guidelines sentence of eighteen months' incarceration followed by eighteen months' supervised release.[1]  Defense counsel objected to the sentence:

---

[1] Smith, conversely, was sentenced to an eight-month term of imprisonment.

> I did not have any chance to review any evidence that I would deem sufficient to reach a preponderance of the evidence as substantial violations beyond the grade C violations we have contained within the petition . . . I would suggest that that [i.e., the above-Guideline sentence] assumes facts that we do not have, which is that there was some sort of evidence of illegal conduct on that phone. We have suggestions. We do not have actual evidence of that, so I would renew my objection."

(*Id.* at PageID ## 283–84). Judgment was entered, and Brown's timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

Claims of both procedural and substantive unreasonableness are reviewed for an abuse of discretion, although the district court's factual findings are reviewed for clear error and its legal conclusions *de novo*. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). This reasonableness review "has two components: procedural and substantive." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (citing another source). "Consequently, our reasonableness review requires [inquiry] into both the length of the sentence and the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Herrera–Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009) (internal quotation and citation omitted). "For sentences within the Guidelines, we may apply a rebuttable presumption of substantive reasonableness." *Bolds*, 511 F.3d at 581. But when a defendant's sentence is outside the Guidelines range, this Court may not apply a presumption of unreasonableness. *Id.*

### B. Analysis

A criminal sentence must be both procedurally and substantively reasonable. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). Brown challenges both components. He contends the district court erred by choosing a sentence based on clearly erroneous facts (procedural unreasonableness) and impermissible factors (substantive unreasonableness). Each argument boils

down to the same core allegation: the imposed sentence was unreasonable because it relied on the extra-record allegations that Brown called Smith from jail while detained. Although couched in terms of substantive reasonableness, Brown's claim that the district court imposed a sentence based on an impermissible factor is better characterized as a procedural reasonableness challenge. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). This Court has recently explained that substantive reasonableness focuses on whether a "sentence is too long (if a defendant appeals) or too short (if the government appeals)." *Rayyan*, 885 F.3d at 442 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "The point [of substantive reasonableness] is not that the district court failed to consider a factor or considered an inappropriate factor; that [is] the job of procedural unreasonableness." *Id.* Consequently, this Court reviews Brown's argument only as a challenge to the procedural reasonableness of his sentence.

Thus, the question on appeal is whether the district court imposed a procedurally unreasonable sentence of imprisonment that relied, in material part, on clearly erroneous facts. After consideration, this Court finds it did. Three points are salient, though only the first two are dispositive to our holding.

First, Brown argues that the district court imposed a procedurally unreasonable sentence because it based his sentence on speculative information lacking record support. We agree. This was not a scenario where the district court simply refused to credit a defendant's version of events. *See Parrish*, 915 F.3d at 1048 (affirming sentence where "[t]he record supported the district court's reasonable inferences"). Instead, the district court trusted facts that were not substantiated in the record before concluding that "it really seems pretty clear . . . that there is criminal conduct going on here, and . . . the evidence of the jail phone calls is really troubling." (Violation Hr'g Tr., R. 66, PageID ## 281–82). In so reasoning, the district court assumed facts of illegal conduct—on

top of the illegal conduct Brown already pled guilty to—where those facts were not in evidence. *United States v. Adams*, 873 F.3d 512, 519 (6th Cir. 2017) (vacating a supervised release violation sentence as procedurally unreasonable where the district court based its eighteen-month sentence partially on an "unsubstantiated assertion" by the government). This is also not a scenario where the district court's reliance on extra-record information was immaterial to its sentence. On the contrary, in its explanation of facts justifying the above-Guidelines sentence, the district court explicitly weighed the phone calls; in announcing the sentence, the court said the calls demonstrated the "need . . . for some deterrence." (Violation Hr'g Tr., R. 66, PageID # 281). On review, we conclude that because "such conclusions were . . . not grounded in record evidence," the sentence was procedurally unreasonable. *See United States v. Hughes*, 283 F. App'x 345, 353 (6th Cir. 2008); *Porter v. Singletary*, 49 F.3d 1483, 1488 n.8 (11th Cir. 1995) (noting that a district court's statement does not establish a fact without record evidence to support it).

Second, and relatedly, this Court has frowned upon a sentencing court's reliance on information not contained in the record where "[the defendant] or his counsel do not have a meaningful opportunity to contest the veracity or relevance of the information relied upon by the district court." *United States v. Hatcher*, 947 F.3d 383, 391 (6th Cir. 2020) (internal citations omitted). In this case, after the district court imposed its above-Guidelines sentence, Brown's defense counsel objected: "I did not have any chance to review any evidence that I would deem sufficient to reach a preponderance of the evidence as substantial violations beyond the grade C violations we have contained within the petition." (Violation Hr'g Tr., R. 66, PageID ## 283–84). Indeed, nothing in the record put Brown on notice that the information of the jail phone calls would be relied upon at sentencing. Even accepting as true the government's representation in its appellate briefing that it provided defense counsel with the transcript of the calls, "neither [Brown]

nor his counsel could have anticipate[d] the weight the court ultimately assigned to th[is] consideration at sentencing." *Hatcher*, 947 F.3d at 392 (internal quotations omitted); *cf. United States v. Burrage*, 951 F.3d 913, 917 (8th Cir. 2020) (finding disclosure adequate where defendant acknowledged he received adverse materials). The district court should not have relied on evidence that the defense attorney indicated he lacked an opportunity to review when imposing its upward variance. For these reasons, the district court's reliance on the alleged jail phone calls constituted procedural error.

Third, Brown contends that the district court violated Federal Rule of Criminal Procedure 32.1(b)(2)(B). That Rule imposes a duty on the government to disclose evidence that the government intends to use against a defendant during a supervised release revocation hearing. Because, in this case, the government's introduction of the jail phone calls postdates the petition, Brown contends it violated Rule 32.1(b)(2)(B). Previously, we have noted that this Rule eludes easy application: "Neither the [R]ule nor the case[law] says *when* the government must make this disclosure. At the revocation hearing? The day before? A month before?" *United States v. Morrow*, 785 F. App'x 335, 338 (6th Cir. 2019); *Burrage*, 951 F.3d at 917 (8th Cir. 2020) (noting government counsel complied with this Rule when it emailed materials to defense counsel "before the revocation hearing"). In Brown's case, it is not clear when the government disclosed to the defense the evidence of the jailhouse phone calls, which makes it difficult for us to apply the Rule's pre-hearing disclosure requirement to this case.

This Rule's statutory construction poses additional interpretive difficulties. The relationship between Rule 32.1 (governing supervised release revocation hearings) and Federal Rule of Criminal Procedure 32 (governing all criminal sentencing procedures, not just those for supervised release violations) is murky. It is particularly unclear whether Rule 32.1(b) applies

only to the revocation portion of a hearing or if it also extends to sentencing—a question that has divided our sister circuits.[2] Even assuming, only for purposes of argument, that Rule 32.1(b)(2)(B) does not apply to the sentencing portion of a revocation hearing but instead only to proving a violation, Brown has elsewhere shown that the district court committed procedural violations.

In sum, the district court's use of the extra-record evidence over the defense objection that it lacked a meaningful opportunity to review the new allegations indicates that the sentence is procedurally unreasonable.

### III.    CONCLUSION

For these reasons, because the district court imposed a procedurally unreasonable sentence of imprisonment based on clearly erroneous facts or impermissible factors, this Court **VACATES** the sentence and **REMANDS** for re-sentencing.

---

[2] On the one side of the debate are the Second, Fifth, Seventh, Tenth, and Eleventh Circuits. The Tenth Circuit reasons that Rule 32.1's protections do not extend to the sentencing: "[T]he sentencing phase of a revocation hearing is governed by the rule surrounding normal sentencing, Rule 32, not Rule 32.1." *United States v. Ruby*, 706 F.3d 1221, 1226 (10th Cir. 2013). The Fifth Circuit appears to concur, finding Rule 32.1 did not require the district court to provide a defendant "with pre-sentencing notice of all points raised in the revocation sentencing colloquy." *United States v. Warren*, 720 F.3d 321, 331 (5th Cir. 2013). In a similar, albeit distinct, vein, the Eleventh Circuit has found that waiver of a revocation hearing also waives any rights Rule 32.1 affords. *United States v. Jones*, 798 F. App'x 494, 497 (11th Cir. 2020). The Second Circuit grapples with Rule 32.1 primarily in the hearsay context, *see United States v. Diaz*, 986 F.3d 202 (2nd Cir. 2021), but seems to be in step with the finding from the Eleventh Circuit that waiving a revocation hearing waives Rule 32.1 rights. *United States v. Shapiro*, 711 F. App'x 25, 29 (2nd Cir. 2017).

On the other side of the debate are the First, Eighth, Ninth and D.C. Circuits, which apply Rule 32.1 to the sentencing phase of revocation hearings, as least for certain purposes, such as timing and allocution. Of these Circuits, the Ninth Circuit has most firmly found that Rule 32.1 applies to the sentencing portion of a supervised release hearing. *United States v. Reyes-Solosa*, 761 F.3d 972, 974 (9th Cir. 2014) (citations omitted) ("We have said that sentencing procedures for probation and supervised release violations are primarily governed by Rule 32.1 . . . not Rule 32."). The Eighth Circuit said: "We agree with the Ninth Circuit that Rules 32 and 32.1 are complementing rather than conflicting[.]" *United States v. Patterson*, 128 F.3d 1259, 1261 (8th Cir. 1997) (citing another source). Similarly, the D.C. Circuit has said: "[W]hen a court revokes a defendant's supervised release, it is sentencing him." *United States v. Abney*, 957 F.3d 241, 251 (D.C. Cir. 2020). The First Circuit has expressed some ambivalence but clearly leans towards finding that Rule 32.1 extends to sentencing procedures. *United States v. Colon-Maldonado*, 953 F.3d 1, 9 n.6 (1st Cir. 2020) (citing another source) ("[W]e've already written that Rule 32.1 governs post-revocation sentencing. . . . Still, this statement . . . was arguably dictum[.]").

The Fourth Circuit is poised to add some clarity to this debate. Br. for the Appellee, *United States v. Combs*, (No. 21-4064) (4th Cir. 2021), 2021 WL 3616436.